UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00085-GNS-HBB

KELSIE SMITH, Individually,
as Court Appointed Guardian of
Minors JS and KS, and as
Co-Administratrix of the Estate of
Cody Smith, deceased                                                        PLAINTIFF

v.

UNITED STATES OF AMERICA                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss and for Partial Summary Judgment (DN 56). The motion is ripe for adjudication. For the reasons below, the motion is **GRANTED**.

### I.     BACKGROUND

On May 6, 2016, Cody Smith ("Decedent") was involved in a fatal motor vehicle accident with an United States Postal Service ("USPS") mail carrier at the intersection of Brownsville and Willis Roads in Butler County, Kentucky. (Compl. ¶¶ 7-10, DN 1). Plaintiff Kelsie Smith is the Co-Administratrix of Decedent's estate and brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, to recover damages from the mail carrier and the United States for wrongful death and loss of consortium.[1] (Compl. ¶¶ 27-28).

---

[1] This Court previously dismissed the claims against the mail carrier pursuant to 28 U.S.C. § 2679, which resulted in the United States being the lone remaining Defendant in this action. (Order Substitution, DN 17).

1

Plaintiff asserts that the mail carrier, after delivering mail to mailboxes on the right side of Brownsville Road, was required by the design of her postal route to turn directly onto Willis Road in violation of KRS 189.380—a Kentucky statute instructing motorists to activate turn signals 100 feet in advance of making any left or right turn. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. 3-4, DN 60 [hereinafter Pl.'s Resp.]).

On the date of the accident, the Decedent and a second motorist approached the mail carrier from behind on their motorcycles. (Pl.'s Resp. 1). Plaintiff contends that the two approaching motorcyclists each began to pass the mail carrier on the left side of the road in a lawful passing zone just as the mail carrier executed the turn onto Willis Road, resulting in the fatal collision. (Pl.'s Resp. 1-2).

Plaintiff alleges the United States negligently failed to inspect and maintain the delivery vehicle for safe operation. (Compl. ¶ 23). She also claims that the United States negligently entrusted the delivery vehicle to the mail carrier involved in the accident. (Compl. ¶ 24). Finally, Plaintiff contends the United States was negligent in "hiring, training, supervising, dispatching, route management, route planning and/or retaining" the mail carrier. (Compl. ¶ 25).

In the present motion, the United States moves to dismiss Plaintiff's negligent hiring, training, supervision, dispatch, route planning, route management and retention claims under Fed. R. Civ. P. 12(b)(1) due to the discretionary function exception to the FTCA's waiver of sovereign immunity set forth in 28 U.S.C. § 2680(a). The United States also moves for summary judgment on the negligent entrustment claim under Fed. R. Civ. P. 56.[2] (Def.'s Mot. Dismiss Part. Summ. J. 1, DN 56 [hereinafter Def.'s Mot. Dismiss]).

---

[2] The United States has not moved to dismiss Plaintiff's claim of negligence for improper inspection and maintenance of the delivery vehicle. (Def.'s Mot. Dismiss 2 n.1).

2

## II. DISCUSSION

### A. Motion to Dismiss

The United States seeks dismissal of Plaintiff's claims on the basis of lack of subject matter jurisdiction. "Subject matter jurisdiction is always a threshold determination." *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citation omitted).

> A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.

*DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *RMI Titanium Co. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133-35 (6th Cir. 1996)). In most circumstances, the plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss. *See Bell v. Hood*, 327 U.S. 678, 681-82 (1946). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Sovereign immunity may serve as a basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). The United States can be sued only to the extent to which it has expressly waived its sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA "waives sovereign immunity to the extent that state-law would impose liability on a private individual in similar circumstances." *Young v. United States*, 71 F.3d 1238, 1241 (6th Cir. 1995) (internal quotation marks omitted) (citation omitted). At the same time, "[t]he FTCA excludes several types of claims from its waiver of sovereign immunity [and] [i]f a case falls within one of these statutory exceptions, the court lacks subject matter jurisdiction over it." *Wilburn v. United States*, 616 F. App'x 848, 852-53 (6th Cir. 2015) (internal citation omitted) (citing *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1994)). The FTCA is the exclusive remedy for suits against the United

States or its agencies sounding in tort, and its waiver of sovereign immunity must be strictly construed in favor of the United States. 28 U.S.C. § 2679(a); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983) (citation omitted).

The United States contends that the discretionary function exception found at 28 U.S.C. § 2680(a) bars Plaintiff's claims and requires the Court to dismiss for lack of subject matter jurisdiction. (Def.'s Mot. Dismiss 1). The discretionary function exception provides that the United States is not liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Conduct falls within the discretionary function exception if it satisfies a two-pronged test: (1) the conduct at issue must be discretionary, "involv[ing] an element of judgment or choice;" and (2) the conduct must involve a "judgment of the kind that the discretionary function exception was designed to shield." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

Conduct involves an element of judgment or choice for purposes of the first prong of the discretionary function exception when no "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.*; *see also Shrieve v. United States*, 16 F. Supp. 2d 853, 856 (N.D. Ohio 1998). The first prong is satisfied when a government official negligently fails to follow mandates. *Berkovitz*, 486 U.S. at 536. For the second prong, a judgment is the kind Congress intended to shield with the discretionary function exception when review involves "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 537 (citation omitted). If the "nature of the actions taken . . . are susceptible to policy analysis," then the second prong is satisfied. *United States v. Gaubert*, 499 U.S. 315, 325-26 (1991).

4

At the outset of this analysis, "we determine exactly what conduct is at issue prior to considering the discretionary function factors." *Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Rosebush v. United States*, 119 F.3d 448, 441 (6th Cir. 1997)). The conduct at issue here is the allegedly negligent "hiring, training, supervising, dispatching, route management, route planning and/or retaining" the mail carrier involved in the accident. (Compl. ¶ 25). In applying the discretionary function analysis to this claim, the Court first divides Plaintiff's claims into two categories: employment decisions and route design.

1. *Employment Decisions*

Plaintiff alleges the mail carrier hired by USPS was "inexperienced, careless, reckless, and/or not properly skilled to operate the subject motor vehicle . . . ." (Pl.'s Compl. ¶ 24). As a result, the United States was allegedly negligent in "hiring, training, supervising, dispatching[3] . . . and/or retaining" the mail carrier, which "resulted in creating a danger and hazard to . . . anyone using public roadways . . . ." (Compl. ¶ 25). In its motion, the United States facially challenges subject matter jurisdiction for this claim, arguing that Plaintiff's employment decision claims are precluded by the discretionary function exception to the FTCA. (Def.'s Mot. Dismiss 7). Accordingly, for purposes of analyzing the discretionary function exception as it applies to employment decisions, "all allegations of the plaintiff must be considered as true . . . ." *DLX*, 381 F.3d at 516 (citation omitted).

---

[3] Negligent dispatch is not a concept which many courts have had the opportunity to address. For purposes of this case, the Court is satisfied that "dispatch" sufficiently falls within the concept of supervision to be addressed as part of broader category of employment decisions. *See Four v. United States ex rel. Bureau of Indian Affairs*, 431 F. Supp. 2d 985, 993 (D.N.D. 2006) (holding that provisions of handbook concerning emergency dispatcher decisions whether to order immediate assistance are discretionary).

5

In applying the first prong of the discretionary function test—and even assuming that the mail carrier involved in the accident was inexperienced and not properly skilled to operate her delivery vehicle—Plaintiff has not alleged that the United States "violated a mandatory regulation or policy that allowed no judgment or choice" in reaching employment decisions. *Rosebush*, 119 F.3d at 441 (citing *Gaubert*, 499 U.S. at 322). Though not specifically addressed or relied upon by Plaintiff for this point, Section 831.31 of the "Post Office Employee and Labor Relations Manual" does require USPS hiring personnel to "ensure that only qualified applicants are hired and retained in driving positions" and refers to the definition of "qualified" in other USPS handbooks. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. J, DN 60-10). Other than conclusory statements in her Complaint, however, Plaintiff has failed to cite to other definitions of "qualified" or otherwise demonstrate that USPS violated this directive in hiring the mail carrier involved in the subject accident.

The language of Section 831.31 does not appear to render USPS' employment decisions nondiscretionary. Indeed, the type of conduct complained of here necessary involves a significant "element of judgment or choice." *Berkovitz*, 486 U.S. at 536 (citation omitted). In *Berkovitz*, the Supreme Court determined claims against the National Institutes of Health's Division of Biologic Standards could proceed when the plaintiffs alleged their child was harmed by vaccines which did not undergo mandatory testing required by safety regulations. *Id.* at 547. These safety policies and regulatory standards left "no room for implementing officials to exercise independent policy judgment" as to whether vaccines should be tested before distribution. *Id*. The Court contrasted this conduct with that of the employees executing the Federal Aviation Administration's "spot-check" program in *United States v. Varig Airlines*, 467 U.S. 797, 820 (1984). *Berkovitz*, 486 U.S. at 537-38. In that case, those employees "'were specifically empowered to make policy judgments

6

regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Varig Airlines*, 467 U.S. at 820.

In the present case, postmasters retain discretion like the spot-check employees in *Varig Airlines*. Postmasters are empowered to assess their confidence in potential hires and make policy judgments which fulfill USPS's responsibility "to maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1). "The post office's choice between several potential employees involves the weighing of individual backgrounds, office diversity, experience and employer intuition. These multi-factored choices require the balancing of competing objectives, and are of the 'nature and quality that Congress intended to shield from tort liability.'" *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) (citation omitted). Because Plaintiff failed to identify a mandatory statute, regulation, or policy mandating particular employment decisions which USPS violated—and because such employment decisions inherently involve elements of judgment and choice—the first prong of the discretionary function exception test is satisfied.

The second prong of the discretionary function test requires the conduct alleged to involve judgment of the type the exception was intended to shield. Hiring, training, and supervising employees, dispatching them to execute mail routes, and decisions to retain or terminate employment require postmasters to perform qualitative assessments of employee performance, office efficiency, and numerous other policy factors. As the court held in *Shrieve*, "[t]he myriad of administrative decisions . . . made daily by Postal Service officials are exactly the type of decisions the discretionary function exception was designed to shield from review under the Federal Tort Claims Act." *Shrieve*, 16 F. Supp. 2d at 859. Such multifaceted considerations are

also clearly susceptible to social, economic, or political analyses, and the exception to waiver of immunity prohibits courts from second-guessing those decisions. *See Berkovitz*, 486 U.S. at 537. The second prong of the discretionary function exception test is satisfied. *See id*.

USPS hiring, supervision, training, dispatch and retention decisions are thus discretionary determinations susceptible to policy analysis. *O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009) ("[T]he selection of employees, officials and officers typically falls within the scope of the FTCA's discretionary function exception."). Therefore, the two-pronged test for invoking the discretionary function exception is satisfied, and the United States cannot be liable for USPS's employment decisions.

### 2. *Route Design*

Plaintiff also claims that USPS negligently designed the postal route in a manner which required the mail carrier to violate KRS 189.380 when she turned from Brownsville Road onto Willis Road. (Pl.'s Resp. 6). In relevant part, KRS 189.380 prohibits drivers from making turns until they can be made with "reasonable safety" and requires drivers to signal intentions to turn left or right "not less than the last one hundred (100) feet traveled by the motor vehicle before the turn." KRS 189.380(1)-(2). To support an alleged violation of this statute, Plaintiff offers several internal USPS documents and characterizes them as policies mandating USPS managers to comply with local and state traffic laws when designing routes to support her contention that the discretionary function exception does not apply to the design of postal routes. (Pl.'s Resp. 5-11).

The United States argues, however, that postal route design falls under the discretionary function exception as involving elements of judgment or choice susceptible to policy analysis. In support, the United States first relies on 39 U.S.C. § 403(b)(1)— providing that "[i]t shall be the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and

8

delivery of the mail nationwide"—to demonstrate that postmasters have discretion as to the design of postal routes. (Def.'s Mot. Dismiss 8). The United States also disputes that the internal policy documents cited by Plaintiff are mandatory directives and instead categorizes them as aspirational safety guidelines. (Def.'s Reply Mot. Dismiss & Partial Summ. J. 9, DN 65). The United States relies on cases from sister courts finding that route design decisions are subject to the discretionary function exception. (Def.'s Mot. Dismiss 8).

For purposes of the discretionary function exception test, the issue becomes whether the internal USPS documents provided by Plaintiff mandate particular conduct for designing postal routes and, if so, whether USPS violated those mandates. *See Gaubert*, 499 U.S. at 324-25. Because the United States attacks the factual basis for jurisdiction by challenging Plaintiff's characterization of internal USPS documents as mandatory policies, this Court "must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX*, 381 F.3d at 516.

Plaintiff has failed to meet her burden of proving subject matter jurisdiction because the internal USPS documents she points to are not mandatory policies concerning postal route design. Plaintiff presents excerpts from several different guidelines, handbooks and forms to support her argument. (Pl.'s Resp. 5-11). The first two are "DriverPak" sections from USPS's "Guidelines for Driving in the United States Postal Service." (Pl.'s Resp. 5). As those titles suggest, however, these documents concern USPS driver safety and contain nothing concerning the design of postal routes. (Pls. Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. B, DN 60-2; Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. C, DN 60-3).

Plaintiff also offers Sections 241 and 245.25 of "The Post Office Fleet Management Handbook." (Pl.'s Resp. 6). The former is a USPS mission statement encouraging USPS

managers "to provide expedient, quality service in the safest mode of handling and delivery. However, in accomplishing our mission managers must emphasize in their daily operations that safety is everyone's responsibility and will not be compromised." (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. D, DN 60-4). Nothing in this section mentions route design, nor does it direct postmasters to plan routes in any specific way other than to provide expedient, quality, and safe service. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. D). Such language leaves discretion regarding how to realize these goals.

Section 245.25 likewise is unconcerned with route design, providing that "[e]mployees driving postal vehicles must comply with state and local traffic laws at all times." (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. E, DN 60-5). This section is also directed to USPS drivers and not postmasters who design postal routes. Thus, neither of these handbook provisions can be construed as a mandatory policy dictating postal route design.

Plaintiff also offers excerpts and forms from the "Management of Delivery Services Handbook M-39," in particular sections 134.1, 134.41(a), 134.42, and 232.1. (Pl.'s Resp. 7). Section 134.1 is titled, "Objectives," and provides guidelines to USPS managers regarding conserving energy, accompanying carriers on streets, being aware of conditions affecting delivery, maintaining a positive attitude and other similar topics. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. F, DN 60-6). Nothing in Section 134.1 mentions route design.

Sections 134.41(a) and 134.42 concern how USPS managers identify and document issues affecting mail delivery. While these sections do provide guidance for matters related to postal routes, nothing in these sections provides mandatory direction to USPS managers regarding how to design those routes. Section 134.41 provides that USPS managers "may find" and then provides a list of potential issues which could affect mail delivery. Section 134.42 contains mandatory

provisions with respect "areas of new construction" and "plan[s] for expansion," but it does not dictate anything regarding the design of postal routes. The closest thing to such a directive is language indicating that USPS managers "must . . . be aware of . . . the need to relocate collection boxes," but that still dictates no action for USPS managers to take in designing routes. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. F).

Plaintiff's reliance on Section 232.1 is also misplaced as that section is concerned with route examination—not route design. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. G, DN 60-7). Plaintiff also relies on Post Office Form 4248 of the Management of Delivery Services Handbook M-39 and its rural counterpart, Post Office Form 3999. (Pl.'s Resp. 8). Those forms, however, are similarly concerned with documenting route inspections—not route design. (*See* Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. G; Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. H, DN 60-8).

Plaintiff claims the Post Office Supervisor's Safety Handbook Section on Rural Delivery Operations is a mandate regarding postal route design at Section 3-5.4(a)-(y). (Pl.'s Resp. 9). Those provisions, however, concern supervision of USPS drivers and their abidance with safe driving practices and traffic laws. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. I, DN 60-9). Nothing there mentions, let alone mandates, how postal routes should be designed. Even on the topic of driver supervision, the language contained at section 3-5.4(x) generally instructs USPS managers that they "must ensure [drivers] [o]bey all local, state, and federal traffic laws[]" without giving any specific directive for how to achieve that result. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. I). The language of these excerpts from this internal USPS policy is discretionary and not mandatory.

11

The final internal document Plaintiff offers as a mandate regarding the design of postal routes is the "Post Office Employee and Labor Relations Manual" at Sections 831.331 and 831.4. (Pl.'s Resp. 9). Much like Section 3-5.4(x) discussed above, Section 831.331 instructs USPS supervisors they must ensure delivery personnel "drive safely, practice defensive driving, practice safety, obey all state and local traffic laws and Postal Service driving policies, and extend courtesy in all situations," without any specific directive for realizing this goal. (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. J). Section 831.4 concerns route inspections "to determine potential hazards, contributing factors, and the root causes of accidents." It goes on to instruct that managers and supervisors "must . . . develop and implement countermeasures designed to prevent motor vehicle accidents at their installations." (Pl.'s Resp. Def.'s Mot. Dismiss & Partial Summ. J. Ex. J). While this language does concern route design, it leaves to managers' and supervisors' judgment exactly what preventative measures are appropriate.

In sum, the documents relied on by Plaintiff are not mandates but rather involve elements of "judgment or choice." *Berkovitz*, 486 U.S. at 536. Thus, the first prong of the discretionary function exception test is satisfied. *See id.*; *see also Shrieve*, 16 F. Supp. 2d at 858 ("[I]nternal regulations of the post office . . . lack the force of law and their violation does not show negligence *per se*," holding the FTCA's discretionary function exception barred recovery for decisions to provide curbside mail delivery to only one side of a residential roadway (citation omitted)); *Riley v. United States*, 486 F.3d 1030, 1033 (8th Cir. 2007) (denying recovery for accidents stemming from allegedly negligent mail box placement because the USPS documents relied on Plaintiff were "guidelines and not mandatory." (citation omitted)).

Plaintiff's reliance on *Lopez v. United States*, 376 F.3d 1055 (10th Cir. 2004), and its finding that internal USPS handbooks were mandates, is misplaced. In *Lopez*, the plaintiff

12

identified clear, nondiscretionary mandates directly relating to mailbox placement. *Lopez*, 376 F.3d at 1058. The present case, however is more akin to the question considered by the Northern District of New York when it concluded USPS had "discretion to devise routes that include U-turns which violate[d] [a New York statute, even though] various USPS employee handbooks state[d] that postal drivers must follow the same state and local traffic laws as other motorists." *Castle v. United States*, No. 1:15-CV-0197 (GTS/TWD), 2017 WL 6459514, at *15 (N.D.N.Y. Dec. 18, 2017). There, that court found that those handbook sections did "not specifically prescribe a course of action that postmasters or others must follow when devising postal routes," and the first prong of the discretionary function test was accordingly satisfied. *Id.* at *15. The same is true here: the handbook sections submitted by Plaintiff do not specifically prescribe a course of action which must be followed in the design of postal routes. *See id.*

The second prong of the discretionary function test is also satisfied because USPS's postal route decisions are the sort of policy judgments Congress sought to protect with sovereign immunity. *See Gaubert*, 499 U.S. at 324 ("When established governmental policy, as expressed or implied by statute, regulation or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."). The configuration of postal routes falls under the discretionary responsibility afforded USPS to "maintain an efficient system of collection, sorting, and delivery of the mail nationwide." 39 U.S.C. § 403(b)(1). The decisions of the USPS regarding postal route design affects the "economic efficiency, the safety of letter carriers and customers, and the satisfaction of postal patrons," which clearly implicate policy judgments.[4] *Shrieve*, 16 F. Supp. 2d at 859.

---

[4] Also supporting this conclusion, as noted in *Shrieve*, is another exception found in the FTCA at 28 U.S.C. § 2680(b). *Shrieve*, 16 F. Supp. 2d at 859. That section excludes from the FTCA's waiver of sovereign immunity "[a]ny claim arising out of the loss, miscarriage, or negligent

13

Plaintiff has failed to provide a nondiscretionary mandate for postal route design, which is fatal to her negligence claim.

Even assuming Plaintiff had identified nondiscretionary mandates that postal route design must comply with state and local traffic laws, nothing Plaintiff offers demonstrates that the postal route in question, as designed, necessarily required the mail carrier to violate KRS 189.380. The mail carrier could certainly have complied with KRS 189.380 by simply activating her turn signal 100 feet before turning onto Willis Road before delivering to the mailboxes on Brownsville Road. Much like the Tenth Circuit's conclusion in *Lopez* that USPS's placement of mailboxes did not violate a New Mexico encroachment statute, the design of the postal route in question did not necessitate the violation of KRS 189.380. *See Lopez*, 376 F.3d at 1058. Accordingly, Plaintiff's claim for negligent postal route design is barred by the discretionary function exception to the waiver of sovereign immunity found in the FTCA.

### B. Motion for Summary Judgment

The United States moves for summary judgment on Plaintiff's negligent entrustment claim because the vehicle at issue in this collision was never entrusted by USPS to the mail carrier. (Def.'s Mot. Dismiss 9). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant's "burden may be met by pointing out to the court that the [nonmovant], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.

---

transmission of letters or postal matter." 28 U.S.C. § 2680(b). Though it is not relied upon by the United States here and it is not dispositive for this claim, this section reinforces the Court's conclusion that tort recovery premised on USPS's postal route decisions are the type of decision Congress intended to insulate by the discretionary function exception to the FTCA. *Shrieve*, 16 F. Supp. 2d at 859.

1989). "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists a genuine issue for trial." *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citation and internal quotation marks omitted). The Court views the evidence in the light most favorable to the nonmovant, but the nonmovant must still present facts proving that a genuine factual issue exists by "citing to particular parts of the record" or by "showing that the materials cited do not establish the absence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)-(B).

In Kentucky, "[t]he common law theory of negligent entrustment is that *one who entrusts his vehicle to another* whom he knows to be inexperienced, careless, or reckless, or given to excessive use of intoxicating liquor while driving, is liable for the natural and probable consequences of the entrustment." *Cox v. Waits*, Nos. 2002-CA-002357-MR, 2002-CA-002418-MR, 2004 WL 405811, at *2 (Ky. App. Mar. 5, 2004) (emphasis added) (citing *Owensboro Undertaking & Livery Ass'n v. Henderson*, 115 S.W.2d 563 (Ky. 1938); *Brady v. B. & B. Ice Co.*, 45 S.W.2d 1051 (Ky. 1932)). Accordingly, for her negligent entrustment claim to survive summary judgment, Plaintiff must allege that: (1) USPS entrusted the mail carrier with a vehicle; and (2) it knew or should have known that the mail carrier was inexperienced, careless, reckless, or under the influence while driving. *See id.*

The United States has pointed out to the Court that Plaintiff has not argued that USPS entrusted to the mail carrier the 1998 Subaru Legacy involved in the accident. (Def.'s Mot. Dismiss 9-10). Similarly, Plaintiff has not offered any nonconclusory statements about the mail carrier's alleged inexperience, carelessness, recklessness, or intoxication during the accident at issue. At this point, the burden shifts to Plaintiff to "put forth enough evidence to show that there

15

exists a genuine issue for trial." *Paragon Data*, 756 F.3d at 520 (internal quotation marks omitted) (citation omitted).

Plaintiff, however, has failed to present *any* evidence or arguments supporting either element of her negligent entrustment claim. In her response, she instead focuses entirely on the negligent route management and planning claims. Because Plaintiff has not offered any evidence supporting either necessary element of negligent entrustment, no genuine issue of material fact persists on this issue, and summary judgment is appropriate. *See J.C. Bradford*, 886 F.2d at 1279.

### III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and for Partial Summary Judgment is **GRANTED**. (DN 56). Plaintiff's claims for negligent hiring, training, supervising, dispatching, retention, route management, and route planning are **DISMISSED WITH PREJUDICE**, and Plaintiff's negligent entrustment of a motor vehicle claim is **DISMISSED WITH PREJUDICE**. Plaintiff's claims of negligence relating to the improper inspection and maintenance of the delivery vehicle remains.

Greg N. Stivers, Chief Judge
United States District Court

December 3, 2018

cc: counsel of record